James F. Niehoff, J.
This is a proceeding brought pursuant to CPLR article 78 to review a final determination made by Abe Lavine, respondent Berger’s predecessor in office as Commissioner of the New York State Department of Social Services in which petitioner’s application for public assistance was denied.
Petitioner, James P. Rae, is a 26-year-old attorney, single, who is employed full time as a VISTA (Volunteers in Service to America) lawyer with the Legal Aid Society of Westchester in Mount Vernon, New York. He has been a VISTA attorney since September, 1974, earning a monthly net income of $220. He does not deny that his monthly budgetary needs amount to only $194.
After accepting employment with VISTA petitioner applied to the Nassau County Department of Social Services ("the Agency”) for public assistance in the category of home relief. The exact date petitioner first applied is not clear, said date being either December 20, 1974 or January 10, 1975. At that time he was living in Great Neck, Nassau County, and commuting each day to work in Westchester County. In any *475 event, on February 10, 1975 the agency notified petitioner that his application had been denied due to "no evidence of determined need.”
Petitioner promptly requested a fair hearing which was held on February 26, 1975. Thereafter, on March 18, 1975 Mr. Abe Lavine rendered a decision affirming the agency’s denial of public assistance finding that petitioner "is not a person ’unable to maintain himself under Social Services Law 131 and, therefore, does not qualify for assistance.”
Put simply, the issue to be decided is whether at the time of his application for home relief the income earned by petitioner as a VISTA volunteer had to be treated as income fully exempted from consideration in determining eligibility for public assistance in the home relief category. If so, he was entitled to home relief and the commissioner acted arbitrarily in denying his application — if not, the respondent acted properly.
Petitioner concedes that since June 23, 1975 the effective date of Administrative Letter 75 ADM-60 he is entitled to no public assistance.
Said letter reads, in part, as follows:
"If a VISTA volunteer was receiving public assistance at the time of enrollment in the VISTA Program, the (monthly) VISTA allowance shall be disregarded in determining continuing eligibility for public assistance and care including food stamps.
"If a VISTA volunteer was not receiving public assistance at the time of enrollment in VISTA, the (monthly) VISTA allowance shall be treated as available income and so utilized to reduce or eliminate the need for public assistance and care including food stamps.”
While conceding that he is entitled to no public assistance since June 23, 1975, petitioner argues that he is entitled to such assistance from the date of his application until June 23, 1975 pursuant to Administrative Letter 74 ADM-97.
Said Administrative Letter 74 ADM-97, which went into effect on June 24, 1974 declares, in pertinent part, that for public assistance programs "payments made to volunteers under the Act [Domestic Volunteers Service Act] are not to be considered as income or resources.”
Subdivision (g) of section 404 of the Domestic Volunteer Service Act of 1973 (87 US Stat 394; PL 93-113) provides that: *476 "Notwithstanding any other provision of law except as may be provided expressly in limitation of this subsection, payments to volunteers under this Act shall not in any way reduce or eliminate the level of or eligibility for assistance or services any such volunteers may be receiving under any governmental program” (emphasis added).
In short, subdivision (g) of section 404 provides that one receiving public assistance will not lose it or have it reduced by benefits thereafter received from VISTA. Of course, petitioner was not receiving public assistance prior to becoming a VISTA volunteer. It was only after he became a VISTA volunteer that he applied for such assistance and the language of subdivision (g) of section 404 would not apply to petitioner but only to persons already receiving governmental assistance who thereafter obtain VISTA employment.
However that may be, the petitioner argues that Administrative Letter 74 ADM-97 establishes the policy of the State Department of Social Services and has the force of law and that regardless of the language of subdivision (g) of section 404 said Administrative Letter established a policy of exempting VISTA income even where the volunteer sought public assistance after becoming a volunteer.
Respondent, on the other hand asserts that Administrative Letter 74 ADM-97 was simply an intra-agency communication issued to all local agencies for the purpose of bringing subdivision (g) of section 404 to the attention of those agencies and that it was never intended to establish a policy of extending the exemption of VISTA income to all such volunteers whether they had been receiving public assistance prior to affiliation with VISTA or were initially making application for public assistance after VISTA affiliation.
In Matter of Eason v Lavine (NYLJ, July 1, 1975, p 9, col 9) Mr. Justice Fine confronted with a set of facts similar to those herein wrote:
"The Administrative Letter establishes the policy of the State Department of Social Services, and has the force of law pursuant to Social Services Law, section 20(3)(d) which authorizes the department to 'establish rules, regulations and policies to carry out its powers and duties under this chapter’.
"Respondent Lavine established a policy of exempting Vista benefits as income and in accordance with this policy, decided in the Matter of Appeal of Peter Vint, decided Oct. 9, 1974 (attached to petitioner’s Memorandum of Law as exhibit 'B’) *477 that the agency must accept the application of a Vista volunteer for home relief and consider his eligibility without regard to Vista payments.
"Thus, the instant decision of respondent violated his own department policy and for that reason must be considered arbitrary and capricious in regard to the petitioner.”
Respondent contends that Mr. Justice Fine misinterpreted the meaning of Administrative Letter 74 ADM-97 and that, as a consequence, Administrative Letter 75 ADM-60 was sent out. In the same vein he asserts that the later letter was sent out to clarify existing policy and that no change of policy was effected by the second directive. Unfortunately for respondent, the language of the directive does not support his argument. Thus, the letter states:
"The purpose of this release is to advise local social services districts of a change in Department policy to bring it irito conformity with the federal policy concerning the treatment of payments and allowances made to VISTA volunteers.”
It will be rioted that the letter does not speak of clarifying prior policy but of changing prior policy. To my mind, the above language virtually constitutes an admission that Mr. Justice Fine correctly interpreted the department’s policy and that a change in the policy was to be undertaken to bring it into conformity with the provisions of subdivision (g) of section 404. That being so, the application by petitioner to annul and reverse the decision of Lavine must be granted.
Petitioner is entitled to public assistance from the date of his application until June 23, 1975 the effective date of Administrative Letter 75 ADM-60.